UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| DESERT BUY PALM SPRINGS, INC., | ) | |
|---|---|---|
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 2:11-CV-132 RLM |
| | ) | |
| DIRECTBUY, INC.; UNITED | ) | |
| CONSUMERS CLUB, INC.; and | ) | |
| DOES 1-10, inclusive, | ) | |
| | ) | |
| Defendants | ) | |

OPINION and ORDER

DirectBuy, Inc. and United Consumers Club, Inc. move to dismiss the second amended complaint of Desert Buy Palm Springs, Inc. under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The defendants have moved to dismiss Desert Buy's claims for breach of contract against DirectBuy and for conversion, unjust enrichment, and breach of trust against DirectBuy and United Consumers Club. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332, and the parties rely on Indiana law to support their arguments.[1]

---

[1] *See* Second Amd. Compl., Exh. 1 (Franchise Agreement), ¶ 18.01 ("This agreement and all issues arising from or relating to this Agreement shall be governed by and construed under the laws of the State of Indiana.").

## I. FACTS

DirectBuy sells franchises or clubs to operators, who, in turn, sell consumer memberships that allow members to purchase goods through any DirectBuy franchise or club for below standard retail prices. In 2007, Desert Buy entered into a Franchise Agreement with DirectBuy that granted Desert Buy the right to operate a DirectBuy club in Palm Desert, California. Desert Buy operated the Palm Desert Center until April 29, 2010 when, due to a downturn in business, Desert Buy informed DirectBuy it was winding down its Palm Desert operation and would no longer sell new memberships. The Palm Desert Center continued to receive shipments of previously ordered products and Desert Buy provided service to its existing members into August 2010.

Desert Buy alleges in its second amended complaint that DirectBuy and/or United Consumers Club, DirectBuy's parent company, wrongfully withheld membership, renewal, and handling fees to which Desert Buy is entitled under the Franchise Agreement and wrongfully assessed charges to Desert Buy after Desert Buy announced it was no longer selling new memberships. According to Desert Buy, DirectBuy breached the Franchise Agreement and the actions of DirectBuy and/or United Consumers Club amount to conversion, unjust enrichment, and breach of trust. Desert Buy seeks consequential and punitive damages.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a complaint that states no claim upon which relief can be granted. A court deciding a Rule 12(b)(6) motion must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor without engaging in fact-finding. Reger Dev., LLC v. National City Bank, 592 F.3d 759, 763 (7th Cir. 2010); In re Consolidated Industries Corp., 360 F.3d 712, 717 (7th Cir. 2004). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (*quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Under the pleading standard of Rule 8(a), a complaint needn't contain "detailed factual allegations," but the complaint's allegations "must be enough to raise a right to relief above the speculative level" and give the defendant fair notice of the claims being asserted and the grounds upon which they rest. Bell Atl. v. Twombly, 550 U.S. at 555; *see also* Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009) ("First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept

as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.").

III. Discussion

*A. Breach of Contract*

DirectBuy moves to dismiss Desert Buy's breach of contract claims in Counts 1, 2, and 3 of the second amended complaint because, DirectBuy says, Desert Buy was the first party to breach the contract, barring Desert Buy from maintaining an action to enforce the contract. According to DirectBuy, the allegations of Counts 1, 2, and 3 "confirm, as a matter of law, that [Desert Buy] first committed a material breach of the contract and therefore [Desert Buy's] breach of contract claims based on the contract are barred as a matter of law." Memo., at 7.

The essential elements of a breach of contract claim under Indiana law are the existence of a contract, a breach of the contract, and damages. Niezer v. Todd Realty, Inc., 913 N.E.2d 211, 215 (Ind. Ct. App. 2009). Desert Buy has alleged that the Franchise Agreement is a valid and enforceable contract, DirectBuy breached the contract by failing and refusing to distribute the membership, renewal, and handling fees due to Desert Buy, and Desert Buy suffered significant injury and damage as a direct and proximate result of that breach. Taken as true, the allegations of Counts 1, 2, and 3 state plausible claims for a breach of contract by DirectBuy.

DirectBuy claims Desert Buy was the first to breach the contract and is correct that "[w]hen one party to a contract commits the first material breach of that contract, it cannot seek to enforce the provisions of the contract against the other party if that other party breaches the contract at a later date," Coates v. Heat Wagons, Inc., 942 N.E.2d 905, 917 (Ind. Ct. App. 2011); *see also* Ream v. Yankee Park Homeowner's Ass'n, Inc., 915 N.E.2d 536, 547 (Ind. Ct. App. 2009) ("A party first guilty of a material breach of contract may not maintain an action against or recover damages from the other party to the contract."), but whether a party has materially breached an agreement is a question of fact. While DirectBuy maintains the allegations of Counts 1, 2, and 3 "confirm, as a matter of law," that Desert Buy was the first party to breach the contract, Memo., at 7, the court can't agree. Desert Buy alleges that it hasn't been paid outstanding fees due to it since the Palm Desert Center first opened, allegations that allow a reasonable inference that DirectBuy was the first to breach the contract. Because the parties' dispute about which of them first breached the Franchise Agreement raises a question of fact not properly decided at this stage of the proceedings, the court must deny the motion to dismiss Counts 1, 2, and 3.

*B. Conversion*

Desert Buy alleges in Counts 4, 5, 6, and 7 that DirectBuy and United Consumers Club engaged in conversion by knowingly exerting and maintaining unauthorized control and possession of funds (membership, renewal, and

5

handling fees) to which Desert Buy is entitled. Desert Buy explains in its response to the motion to dismiss that its allegations in those counts are ones for criminal and civil conversion. DirectBuy and United Consumers Club say the conversion claims should be dismissed because (a) Desert Buy hasn't properly pleaded the elements of criminal conversion, (b) the Franchise Agreement authorizes DirectBuy to apply the various fees to offset amounts owed by Desert Buy, so Desert Buy's allegations of civil conversion are "insufficient to overcome or dispel DirectBuy's explicit authority under the set-off provisions" to apply those funds to Desert Buy's financial obligations, and (c) the Franchise Agreement bars recovery of punitive damages.

Indiana Code § 35–43–4–3(a) defines criminal conversion as knowingly or intentionally exerting unauthorized control over the property of another. Indiana Code § 34–24–3–1 provides that one who suffers a pecuniary loss as a result of a violation of Indiana Code § 35–43–4–3 may bring a civil action against the person who caused the loss. Intent is an essential element of a criminal conversion action: "To establish that intent, a plaintiff must show the defendant was aware of a high probability his control over the plaintiff's property was unauthorized." Schrenker v. State, 919 N.E.2d 1188, 1194 (Ind. Ct. App. 2010). While criminal conversion requires the unauthorized control to be either knowing or intentional, "*mens rea* is not an element of tortious conversion. . . . Conversion, as a tort, is the appropriation of the personal property of another to the party's own use and benefit, or in its destruction or in exercising dominion over it in exclusion and

6

defiance of the rights of the owner or lawful possessor, or in withholding it from his possession under a claim and title inconsistent with the owner's." Schrenker v. State, 919 N.E.2d at 1194; *see also* Greg Allen Constr. Co., Inc. v. Estelle, 798 N.E.2d 171, 173 (Ind. 2003) ("To the extent that a plaintiff's interests have been invaded beyond a mere failure to fulfill contractual interests have been invaded beyond a mere failure to fulfill contractual obligations, a tort remedy should be available.").

Desert Buy alleges in each of Counts 4-7 that DirectBuy and United Consumers Club "took possession and control" of various funds to which Desert Buy had an "immediate and unqualified right to receive." Second Amd. Compl., ¶¶75-76, 84-85, 93-94, 102-103. Desert Buy says it placed those funds into trust accounts that DirectBuy and United Consumers Club controlled, and DirectBuy and United Consumers Club knowingly and intentionally exerted unauthorized control over the funds, which amounted to conversion of Desert Buy's property. Second Amd. Compl., ¶¶ 78, 81; 87, 90; 96, 99; 105, 108. Desert Buy concludes that "Defendants' maintaining unauthorized control and possession of the [funds] was a substantial factor in causing Desert Buy's harm." Second Amd. Compl., ¶¶ 80, 89, 98,107. Desert Buy says Counts 4-7 shouldn't be dismissed because it has alleged the necessary elements, including a requisite *mens rea*, to support claims for criminal and civil conversion.

Taking as true the allegations of Counts 4-7, Desert Buy has set forth facts sufficient to state plausible claims for criminal and civil conversion, *i.e.*, that

DirectBuy and United Consumers Club "knowingly and intentionally" took "unauthorized control" over "property" belonging to Desert Buy and converted those funds to a use not contemplated or authorized by DirectBuy's and United Consumer Club's positions as trustees of the funds. Deciding whether Desert Buy had an unqualified right to the funds, whether either or both of the defendants had the requisite *mens rea*, and/or whether provisions of the Franchise Agreement control on the issues of debt set-off and punitive damages, as the defendants are asking the court to do, would require fact-finding that isn't allowed in ruling on a motion to dismiss.

The defendants argue, too, that Desert Buy's claims should be dismissed against United Consumers Club because, as a parent company, United Consumers Club can't be liable for its subsidiary's actions without an independent legal basis and Desert Buy has alleged no such independent basis. While the defendants are correct that the mere existence of a subsidiary-parent relationship is not, without more, sufficient reason to disregard the corporate identity, Winkler v. V.G. Reed & Sons, Inc., 638 N.E.2d 1228, 1234 (Ind. 1994), Desert Buy says an independent basis exists based on its allegations that United Consumers Club knowingly and intentionally took possession and control of Desert Buy's funds that were in trust or escrow accounts United Consumers Club controlled, and United Consumers Club didn't surrender those funds, harming Desert Buy. Those allegations are sufficient to state a claim against United Consumers Club for its own actions, not merely because it's DirectBuy's parent corporation.

Lastly, DirectBuy and United Consumers Club assert the conversion claims should be dismissed because Desert Buy hasn't alleged that a determinative sum of money was converted. "Under Indiana law, money may be the subject of an action for conversion, but it must be capable of being identified as a special chattel. The money must be a determinable sum that the defendant was entrusted to apply to a certain purpose." DNET Servs., LLC v. Digital Intelligence Sys. Corp., No. 1:08-cv-252, 2009 WL 1259375, at *3 (S.D. Ind. May 5, 2009); *see also* Kentuckiana Healthcare v. Fourth Street Solutions, LLC, No. 4:04-cv-22, 2007 WL 968754, at *4 (S.D. Ind. Mar. 22, 2007) ("[W]hen money is specifically segregated or identified, the money begins to take on the properties of ordinary chattel that can be the subject of conversion and a conversion action."). Contrary to the defendants' claim, Desert Buy alleges conversion of membership fees in the sum of $129,293.01, renewal balance fees in the sum of $13,464.52, handling fees in the sum of $22,258.53, and a specific sum of determinable subsequent renewal fees that can and will be identified through discovery.

Because the allegations of the second amended complaint are sufficient to state conversion claims as to DirectBuy and United Consumers Club, the motion to dismiss Counts 4, 5, 6, and 7 must be denied.

*C. Unjust Enrichment*

Counts 8, 9, 10, and 11 contain Desert Buy's allegations of unjust enrichment as to DirectBuy and United Consumers Club. The companies say the

9

existence of an express contract bars Desert Buy's claims, while Desert Buy maintains it's entitled to plead unjust enrichment as an alternative theory to breach of contract.

Unjust enrichment is a quasi-contract claim, which "'is a legal fiction invented by the common-law courts in order to permit a recovery . . . where, in fact, there is no contract, but where the circumstances are such that under the law of natural and immutable justice there should be a recovery as though there had been a promise.'" Landeen v. PhoneBILLit, Inc., 519 F. Supp. 2d 844, 865 (S.D. Ind. 2007) (*quoting* Bayh v. Sonnenburg, 573 N.E.2d 398, 408 (Ind. 1991)). When a valid and enforceable contract exists, no claim for unjust enrichment may be maintained. Wal-Mart Stores, Inc. v. S.C. Nestel, Inc., No. 1:07-cv-470, 2009 WL 838586, at *10 (S.D. Ind. Mar. 30, 2009) ("an unjust enrichment action arises only where no contract governs the relationship"); DiMizio v. Romo, 756 N.E.2d 1018, 1025 (Ind. Ct. App. 2001) (same). A party can't pursue a quasi-contract claim simply because its contract claim fails, without alternatively alleging that there was either no contract or the contract at issue was unenforceable. "Once a valid contract is found to exist, quasi-contractual relief is no longer available." Cromeens, Holloman, Sibert, Inc. v. AB Volvo, 349 F.3d 376, 397 (7th Cir. 2003).

DirectBuy maintains that Desert Buy's claims of unjust enrichment should be dismissed because the Franchise Agreement controls its relationship with Desert Buy. The second amended complaint alleges that the Franchise Agreement is a valid and enforceable contract. *See* Second Amd. Compl., ¶¶ 51, 59, 67. To

plead unjust enrichment, then, Desert Buy must claim that a contract did not exist. Desert Buy hasn't alleged that it had no contract with DirectBuy or that the contract was unenforceable. *See* CoMentis, Inc. v. Purdue Research Foundation, 765 F. Supp. 2d 1092, 1103 (N.D. Ind. 2011) ("CoMentis may not seek unjust enrichment *just in case* the contract does not afford it the relief it seeks; a valid contract still governs the parties' rights with respect to the subject matter at issue.") (emphasis in original); DeMizio v. Romo, 756 N.E.2d at 1025 (unjust enrichment claim was improper where "the original contract and its modifications satisfied the formalities required to create an enforceable contract"). Although plaintiffs may plead in the alternative in most circumstances, the motion to dismiss the claims for unjust enrichment in Counts 8, 9, 10, and 11 as to DirectBuy must be granted.

United Consumers Club argues that the unjust enrichment claims against it should be dismissed, too, because Desert Buy hasn't alleged an independent basis for liability. Unjust enrichment is an appropriate claim when "no contract actually exists but where justice nevertheless warrants a recovery under the circumstances as though there had been a promise." DiMizio v. Romo, 756 N.E.2d at 1024-1025. A claim of unjust enrichment requires a claimant to allege that a measurable benefit has been conferred on the defendant "under such circumstances that the defendant's retention of the benefit without payment would be unjust." Zoeller v. East Chicago Second Century, Inc., 904 N.E.2d 213, 220 (Ind. 2009).

11

Desert Buy hasn't alleged it had a contract with United Consumers Club, but claims it conferred benefits on United Consumers Club by depositing funds into escrow and trust accounts controlled by United Consumers Club and by being required to pay United Consumers Club for marketing leads assessed after Desert Buy was no longer selling memberships. Taken as true, Desert Buy's allegations – that United Consumers Club's wrongful retention of those funds amounts to unjust enrichment – provide an independent basis for liability against United Consumers Club, and the court will deny the motion to dismiss Counts 8, 9, 10, and 11 as to United Consumers Club.

### D. Breach of Trust

Desert Buy sets forth a breach of trust claim in Count 12 against DirectBuy and United Consumers Club, alleging a fiduciary relationship existed between the parties based on DirectBuy and United Consumers Club serving as trustees of the escrow and trust funds into which Desert Buy deposited funds. Desert Buy maintains it was the beneficiary of the deposited funds and argues that the trust relationship is independent of the Franchise Agreement. DirectBuy and United Consumers Club assert that the breach of trust claim fails because the Franchise Agreement expressly disclaims any trust relationship.

"Under Indiana law, a claim for breach of trust is a claim for breach of fiduciary duty and thus requires a fiduciary relationship." No Baloney Marketing, LLC v. Ryan, No. 1:09-cv-200, 2010 WL 1286720, at *19 (S.D. Ind. Mar. 26, 2010);

*see also* Gagan v. United Consumers Club, Inc., No. 2:10-CV-26, 2012 WL 729943, at *4 (N.D. Ind. Mar. 6, 2011) ("[U]nder Indiana law, a claim for breach of fiduciary duty is a tort claim for injury to personal property."). To state a claim for breach of fiduciary duty, Desert Buy must allege the existence of a fiduciary relationship; a breach of the duty owed by the fiduciary to the beneficiary; and harm to the beneficiary. York v. Fredrick, 947 N.E.2d 969, 978 (Ind. Ct. App. 2011). A fiduciary relationship doesn't exist unless a relationship of trust and confidence exists between the parties, No Baloney Marketing, LLC v. Ryan, 2010 WL 1286720, at *19; York v. Fredrick, 947 N.E.2d 969, 978 (Ind. Ct. App. 2011), and whether such a relationship exists is a question of fact. Kreighbaum v. First Nat'l Bank & Trust, 776 N.E.2d 413, 419–420 (Ind. Ct. App. 2002).

Desert Buy alleges that the various fees it deposited into trust accounts were controlled by DirectBuy and United Consumers Club, as trustees. Desert Buy also alleges it's the beneficiary of those fees, it has fully performed all the necessary conditions to entitle it to receipt of the fees, and it has been harmed by the failure and refusal of DirectBuy and United Consumers Club to disburse the fees. Taken as true, Desert Buy's claims plausibly suggest a fiduciary relationship between the parties, a breach by the trustees, and harm to Desert Buy. The facts alleged are sufficient to state a claim for breach of trust.

The defendants' argument that the breach of trust claim should be dismissed because the Franchise Agreement prevents the existence of any fiduciary relationship between the parties is premature. Desert Buy has alleged

13

that DirectBuy, as the first party to breach the Franchise Agreement, can't enforce the terms of the contract and United Consumers Club wasn't a party to the contract. The parties' disagreement about whether a fiduciary relationship could or did exist raises a question of fact not properly resolved in connection with a motion to dismiss.

United Consumers Club argues, too, that the claims against it should be dismissed because it can't be held liable as a parent corporation for a subsidiary's breach of trust. Desert Buy, though, has alleged that United Consumers Club was a trustee and administrator of the funds at issue, that as a trustee it was in a position of trust and confidence with Desert Buy, and its refusal to disburse those funds has harmed Desert Buy. Those allegations, taken as true, state a plausible claim of breach of trust against United Consumers Club separate and apart from the claims against DirectBuy.

Count 12 contains allegations sufficient to state a claim for breach of trust against DirectBuy and United Consumers Club, so the motion to dismiss that count will be denied.

## IV. CONCLUSION

Based on the foregoing, the court GRANTS in part and DENIES in part the motion to dismiss [docket # 74] in the following particulars:

(a) the motion is GRANTED with respect to the claims of unjust enrichment against defendant DirectBuy, and the allegations of Counts 9, 10, and 11 as to DirectBuy only are DISMISSED; and

(b) the motion is DENIED in all other respects.

The court additionally notes that it has the obligation to inquire into its own subject matter jurisdiction. Smoot v. Mazda Motors of America, Inc., 469 F.3d 675, 678 (7th Cir. 2006) (because "limits on subject-matter jurisdiction are not waivable or forfeitable . . . federal courts are required to police their jurisdiction"). Desert Buy's second amended complaint doesn't properly allege the existence of diversity jurisdiction. First, the complaint alleges that Desert Buy is "a California corporation qualified to do business in the State of California," but sets forth no allegations relating to the corporation's principal place of business. 28 U.S.C. § 1332(c) provides that a corporation is a citizen of both the state in which it is incorporated and the state in which it has its principal place of business, and if Desert Buy's principal place of business is located in Indiana, there is no diversity of citizenship. Smoot v. Mazda Motors, 469 F.3d at 676.

In addition, the second amended complaint alleges that defendants Does 1-10 "are responsible in some manner for the occurrences herein," but unidentified Doe defendants are not permitted in federal diversity suits. Diversity jurisdiction must be proved by the plaintiff rather than assumed as a default, so "the existence of diversity jurisdiction cannot be determined without knowledge of every defendant's place of citizenship." Howell v. Tribune Entertainment Co., 106

15

F.3d 215, 218 (7th Cir. 1997); *see also* Rouben v. Parkview Hosp., Inc., No. 1:10-CV-397, 2010 WL 5027562, at *1 (N.D. Ind. Dec. 3, 2010) ("The clearly established requirement that diversity jurisdiction be plead on personal knowledge means that the plaintiff must actually state the identity of the 'John Doe' defendants to establish their citizenship – one cannot allege they have personal knowledge of the citizenship of unknown parties."). While some exceptions to the John Doe ban exist – when John Doe defendants "are merely nominal parties, irrelevant to diversity jurisdiction," or when a John Doe defendant is named in a suit based on federal question jurisdiction – those exceptions don't appear to be applicable here. Howell v. Tribune Entertainment Co., 106 F.3d at 218.

The court affords the plaintiff twenty days from the date of this order to file an amended complaint alleging the existence of diversity jurisdiction under 28 U.S.C. § 1332.

SO ORDERED.

ENTERED:   June 12, 2012


                                          /s/ Robert L. Miller, Jr.
                                        Judge, United States District Court